UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**TERESA O'NEAL and MARCO
DELGADO,** individually and on
behalf of all other similarly situated
persons,

    **Plaintiffs,**

  v.           **Case No. 8:11-CV-107-T-17-TGW**

**BANK OF AMERICA, N.A., a
foreign corporation,**

    **Defendant.**

_____/

<u>ORDER</u>

This cause is before the Court on:

| | |
|---|---|
| Dkt. 1 | Class Action Complaint |
| Dkt. 23 | Defendant's Motion to Dismiss |
| Dkt. 31 | Response to Motion to Dismiss |
| Dkt. 38 | Reply in Support of Motion to Dismiss |

The Class Action Complaint contains the following claims against Defendant

Bank of America, N.A.:

| | |
|---|---|
| Count I | 42 U.S.C. §1983—Violation of Constitutional Rights |
| Count II | Declaratory Judgment |
| Count III | Florida RICO Act |
| Count IV | 15 U.S.C. § 1692—Violation of FDCPA |

Case No. 8:11-CV-107-T-17-TGW

Plaintiffs claim jurisdiction based upon diversity of citizenship, 28 U.S.C. §
1332(a), the Class Certification Fairness Act, 28 U.S.C. § 1332(d)(2)(a), and the
Declaratory Judgment Act, 28 U.S.C. § 2201.

## BACKGROUND

Plaintiffs, Teresa O'Neal and Marco Delgado, filed the instant lawsuit on January
18, 2011.  (Dkt. 1).  Plaintiffs allege that, since at least 2007, Defendant Bank of
America, N.A. (hereinafter "BofA" or "Defendant") has repeatedly submitted false
representations and filings to the Florida state courts in foreclosure actions and related
proceedings. (Dkt. 1, at ¶ ¶ 1, 4–5).  "Plaintiffs' Complaint centers on the Defendant's
filing of Certifications and Affidavits signed by employees or agents of Defendant in
support of foreclosure actions against Plaintiffs' homes, in cases in which a judgment of
foreclosure has been entered, a foreclosure sale has occurred, and Defendant currently
holds title to the property in any capacity." (Dkt. 1, at ¶2).  Specifically, Plaintiffs claim
that BofA's agents and employees: (1) failed to read the certifications and affidavits
they signed; (2) failed to review or to verify the accuracy of the information certified in
the certifications and affidavits; (3) falsely claimed to have control and custody of
records of mortgage transactions referred to in the certifications and affidavits; (4) failed
to review or otherwise have knowledge of mortgage documents they certified as
accurate; (5) falsely claimed to have signed the affidavits in the presence of a
registered and witnessing notary public; and (6) had such affidavits and certifications
executed by persons who were not notaries public but used other notaries' stamps.

2

Case No. 8:11-CV-107-T-17-TGW

Plaintiffs accordingly assert that BofA foreclosed upon homes using documents that were forgeries under Florida law.  (Dkt. 2, at ¶ 2).

Plaintiffs further claim that, as a result of BofA's alleged forgeries, "hundreds, if not thousands, of Florida homeowners, who are represented in this action by the Plaintiffs, have lost their critical statutory right of redemption and lost their homes based on false information." (Dkt. 1, at ¶ 8).  In addition to losing their homes, Plaintiffs contend that these Florida homeowners have had to defend wrongful foreclosures and that these actions negatively affect their credit. (Dkt. 1, at ¶ 9).  Finally, Plaintiffs claim that the wrongful foreclosures have caused them to be unnecessarily charged various attorneys' fees and costs, which artificially inflated the amount deducted from the proceeds of the foreclosure sales to satisfy Plaintiffs' debts. (Dkt. 1, at ¶ 10).

BofA has prosecuted foreclosure actions against both named Plaintiffs, and this Court takes judicial notice of the state court dockets in both cases.  (Dkt. 64); *see* Fed. R. Evid. 201.  On May 12, 2009, BofA filed a two-count mortgage foreclosure complaint as trustee for certificate holders of a securitized asset against Teresa O'Neal ("Plaintiff O'Neal") in the Circuit Court for the Thirteenth Judicial Circuit in and for Hillsborough County, Florida, Case No. 09-CA-012465.  Plaintiff O'Neal was served with process on May 21, 2009.  On June 19, 2009, BofA filed an Affidavit of Amounts Due and Owing. A default was entered against Plaintiff O'Neal on March 9, 2010, and BofA submitted a Motion for Final Summary Judgment that same day.  On June 16, 2010, BofA filed another Affidavit as to Amounts Due and Owing, and on August 27, 2010, the court

3

Case No. 8:11-CV-107-T-17-TGW

entered a Final Judgment After Default.  The Judicial Sale of the foreclosed property took place on September 30, 2010.  (Dkt. 64).

As to Plaintiff Marco Delgado ("Plaintiff Delgado"), BofA filed a two-count mortgage foreclosure complaint against him on October 1, 2008 in the Circuit Court for the Thirteenth Judicial Circuit in and for Hillsborough County, Florida, Case No. 08-CA-023026.  Plaintiff Delgado was served with process on October 8, 2008.  On or about May 26, 2009, BofA filed a Certificate of Compliance with Foreclosure Proceedings, and on June 1, 2009, BofA filed a Motion for Summary Judgment.  A Final Judgment After Default was entered March 31, 2010, and BofA filed an Affidavit of Amount Due on December 1, 2009.  The Judicial Sale took place on September 17, 2010.

In Count I of the Complaint, Plaintiffs allege a violation of 42 U.S.C. § 1983, contending that BofA deprived them of their property without due process of law by using false and forged writings in a court proceeding (e.g., the foreclosure) that caused Plaintiffs to lose ownership and possession of their properties.  (Dkt. 1, at ¶ 81). Plaintiffs suggest that, by employing the official procedures of the State of Florida to foreclose upon the properties and auction them off, BofA acted under color of state law insofar as they were "dependent upon significant assistance from State officials." (Dkt. 1, at ¶ 82–83).   According to Plaintiffs, they have been deprived of their constitutional rights under color of state law and are entitled to actual damages and costs.  (Dkt. 1, at ¶ 84).

Case No. 8:11-CV-107-T-17-TGW

In Count II of the Complaint, Plaintiffs request a declaratory judgment pursuant to 28 U.S.C. § 2201, finding that "Defendant's conduct was inequitable and done with unclean hands and that the foreclosure and deficiency judgments obtained through the use of forged and false writings are voidable." (Dkt. 1, at ¶ 100).  Plaintiffs additionally request, *inter alia*, a declaration that "the Plaintiffs and Class members [sic] have a right of redemption in the title [to the real property], and must now be given a reasonable opportunity to exercise said right of redemption." (Dkt. 1, at ¶ 100).

Count III of the Complaint sets forth a claim for violation of the Florida Civil RICO Act, Fla. Stat. § 772.101–772.19 (2010).   Plaintiffs allege that BofA conducted its business through a pattern of racketeering by submitting forged documents and committing perjury through false filings "in an effort to foreclose on properties [it] does not own, or obtain wrongful title to said properties and therefore profit by the pattern of criminal activity." (Dkt. 1, at ¶ 104).  Plaintiffs request nominal damages trebled pursuant to section 772.104 of the Florida Statutes and also claim damages "in that they have: accrued unnecessary costs and fees; become subject to deficiency judgments; lost title to real property; and have suffered consequential damages, such as improper damage to their credit ratings." (Dkt. 1, at ¶ 110–11).

Finally, in Count IV of the Complaint, Plaintiffs allege violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692.  The gravamen of this claim is that, by acting as trustee for the certificate holders of the securitized mortgage notes in foreclosing upon Plaintiffs' homes, BofA acted as a debt collector and violated the

Case No. 8:11-CV-107-T-17-TGW

FDCPA by making false representations throughout the foreclosure proceedings. (Dkt.

1, at ¶ 118). Accordingly, Plaintiffs seek $500,000 plus costs and fees pursuant to 15

U.S.C. § 1696(k).

## STANDARD OF REVIEW

A defendant's Rule 12(b)(1) motion for lack of subject matter jurisdiction may

take two forms—a facial attack and a factual attack. *Stalley ex rel. U.S. v. Orlando*

*Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008). Facial attacks on the

complaint "require[ ] the court merely to look and see if [the] plaintiff has sufficiently

alleged a basis of subject matter jurisdiction, and the allegations in his complaint are

taken as true for the purposes of the motion." *Lawrence v. Dunbar*, 919 F.2d 1525,

1529 (11th Cir. 1990) (quoting *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511

(5th Cir. 1980)).

"Factual attacks, on the other hand, challenge the existence of subject matter

jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings,

such as testimony and affidavits, are considered." *McElmurray v. Consol. Gov't of*

*Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007); *see Stalley*, 524 F.3d

at 1233 ("By contrast, a factual attack on a complaint challenges the existence of

subject matter jurisdiction using material extrinsic from the pleadings, such as affidavits

or testimony."). In a factual attack, courts are at liberty to weigh the evidence to satisfy

themselves they have the power to adjudicate the case prior to proceeding. *Figueroa v.*

*Merscorp, Inc.*, 766 F. Supp. 2d 1305, 1315 (S.D. Fla. 2011). Moreover, the plaintiff's

6

Case No. 8:11-CV-107-T-17-TGW

allegations do not enjoy a presumption of validity, and "the burden is on the plaintiff to

prove that jurisdiction exists." *OSI, Inc. v. United States*, 285 F.3d 947, 951 (11thCir.

2002); *see also Sweet Pea Marine, Ltd. v. APJ Marine, Inc.*, 411 F.3d 1242, 1247 (11th

Cir. 2005). BofA's *Rooker-Feldman* challenge in this case is a factual attack on the

Court's subject matter jurisdiction. *Dean v. Wells Fargo Home Mortg.*, 2:10-CV-564-

FTM-29, 2011 WL 1515106, at *2 (M.D. Fla. Apr. 21, 2011); *see Tindall v. Gibbons*,

156 F. Supp. 2d 1292, 1299 (M.D. Fla. 2001).

## DISCUSSION

This Court "has an independent duty to ensurė that . . . it has subject matter

jurisdiction over the claims presented before ruling on the merits of a claim." *Parker v.*

*Potter*, 368 F. App'x 945, 947 (11th Cir. 2010). Here, BofA argues that the *Rooker-*

*Feldman* doctrine renders this Court without subject matter jurisdiction over the case at

bar. *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415–16 (1923) (explaining that, in

cases under the "province and duty of the state courts," "no court of the United States

other than this [C]ourt could entertain a proceeding to reverse or modify the judgment");

*D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 476 (1983) ("The District of Columbia

Circuit properly acknowledged that the United States District Court is without authority

to review final determinations of the District of Columbia Court of Appeals in judicial

proceedings. Review of such determinations can be obtained only in this Court.").

Case No. 8:11-CV-107-T-17-TGW

## A. The *Rooker-Feldman* Doctrine

"Under the *Rooker-Feldman* doctrine, '[i]t is well-settled that a federal district court lacks jurisdiction to review, reverse, or invalidate a final state court decision." *Velardo v. Fremont Investment & Loan*, 298 F. App'x 890, 892 (11th Cir. 2008).  The *Rooker-Feldman* doctrine is "grounded on federalism, comity and the premise that state courts are not inferior to federal courts."  *Termarsch v. Argent Mortg. Co., LLC*, No. 8:07-CV-1725-T-30TBM, 2008 WL 1776592, at *3 (M.D. Fla. Apr. 16, 2008) (internal quotation marks omitted).  In a recent decision, the Eleventh Circuit "delineat[ed] the boundaries of the *Rooker-Feldman* doctrine: 'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" *Nicholson v. Shafe*, 558 F.3d 1266, 1274 (11th Cir. 2009) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)) (eschewing the four-part test of *Amos v. Glynn Cnty. Bd. of Tax Assessors*, 347 F.3d 1249, 1266 n.11 (11th Cir. 2003)).

The *Rooker-Feldman* doctrine applies "both to federal claims raised in the state court and to those 'inextricably intertwined' with the state court's judgment." *Casale v. Tillman*, 558 F.3d 1258, 1260 (11th Cir. 2009); *Cormier v. Horkan*, 397 F. App'x 550, 552 (11th Cir. 2010) (per curiam) ("We must determine whether a plaintiff is a state-court loser who is complaining of injuries caused by state-court judgments [by] evaluating whether the plaintiff's claims are 'inextricably intertwined' with the state court

8

Case No. 8:11-CV-107-T-17-TGW

judgment." (internal citations omitted)). The Eleventh Circuit has enumerated two

"scenarios" where a federal claim is 'inextricably intertwined' with a previously rendered

state-court judgment: "(1) where the success of the federal claim would 'effectively

nullify' the state-court judgment; and (2) where the federal claim 'succeeds only to the

extent that the state wrongly decided the issues.'" *Figueroa*, 766 F. Supp. 2d at 1316

(quoting *Springer v. Perryman*, 401 F. App'x 457, 458 (11th Cir. 2010) (per curiam).

That said, a federal claim will not be deemed "inextricably intertwined" with the state-

court judgment to the extent that the party did not have a "reasonable opportunity to

raise his federal claim in state proceedings." *Casale*, 558 F.3d at 1260.

### 1. The Procedural Requirements of *Rooker-Feldman* Are Satisfied

Applying the principles set forth above to the facts at hand, there is no doubt that

the Court deals here with "state-court judgments rendered before the district court

proceedings commenced.'" *Nicholson v. Shafe*, 558 F.3d at 1274. Final Judgment After

Default was rendered in Plaintiff O'Neal's foreclosure action on August 27, 2010, and in

Plaintiff Delgado's foreclosure action on March 31, 2010. (Dkt. 1, at ¶¶ 70, 75). Neither

party has pursued a direct appeal within state court. *See Nicholson*, 558 F.3d at 1276

(explaining that the "*Rooker-Feldman* doctrine applies where the state court loser

declines to appeal an adverse state trial court judgment"). The instant action was filed

on January 18, 2011, after the entry of final judgment in both state-court foreclosure

proceedings. Accordingly, there is no procedural bar to the application of *Rooker-*

*Feldman* in this case.

Case No. 8:11-CV-107-T-17-TGW

### 2. The Federal Claims are "Inextricably Intertwined" with
### the Prior State-Court Foreclosure Judgments

Plaintiffs' instant federal claims are also "inextricably intertwined" with the

previously rendered state-court foreclosure judgments.  Plaintiffs argue that they

"directly attack the *conduct* of [BofA] in obtaining the judgments" and not the state-court

foreclosure judgments themselves, but they are wrong.  (Dkt. 31, at 16) (emphasis in

original).  That is so because, in order for any of Plaintiffs' claims to succeed, this Court

would have to find that the documents submitted by BofA in support of the

foreclosures—documents that form part of the very predicate for the state-court

foreclosure judgments themselves—were fraudulent.  *See Figueroa*, 766 F. Supp. 2d at

1324 ("If the Court concludes that . . . fraud occurred in obtaining the foreclosures, and

that the fraud damaged Plaintiff and class members, the Court would be saying the

foreclosures were wrongfully granted and the resulting judgments are void.").  Plaintiffs

have asked for an order declaring the state court judgments voidable rather than void,

but this does not solve the problem.  Plaintiffs' claims can only succeed to the extent

that the Florida state courts wrongly granted the foreclosures at issue, and Plaintiffs'

claims here are therefore inextricably intertwined with the state-court foreclosure

judgments. *Springer*, 401 F. App'x at 457; *see Figueroa*, 766 F. Supp. 2d at 1324 ("[B]y

entering judgments of foreclosure, the Florida state courts determined the foreclosures

were proper.  These state courts exercised their authority over state law and found the

foreclosing parties had satisfied Florida's procedural safeguards.").

This view is fortified by the fact that the Eleventh Circuit and many district courts

Case No. 8:11-CV-107-T-17-TGW

within this circuit have reached an identical conclusion to that reached by this Court today in cases strikingly similar to the case at bar. *See, e.g., Parker*, 368 F. App'x at 947–48 (rejecting Truth in Lending Act ("TILA") Claim that sought rescission of a state foreclosure judgment); *Velardo*, 298 F. App'x at 892–93 (dismissing TILA claims because "it is obvious [the federal claims] were inextricably intertwined with those litigated by the [state] circuit court [foreclosure] judgment" and barred by *Rooker-Feldman*); *Harper v. Chase Manhattan Bank*, 138 F. App'x 130, 132–33 (11th Cir. 2005) (dismissing FDCPA, TILA, and Equal Credit Opportunity Act claims pursuant to *Rooker-Feldman*); *Figueroa*, 766 F. Supp. 2d at 1324 (holding federal RICO claims predicated on allegedly fraudulent foreclosure documents precluded by *Rooker-Feldman*); *see also Aboyade-Cole Bey v. BankAtlantic*, No. 6:09-CV-1572-ORL-21GJK, 2010 WL 3069102, at *2 (M.D. Fla. Aug. 2. 2010) (applying *Rooker-Feldman* because "this case, at its core, is an attempt by [Plaintiff] to appeal the decision of the state court permitting Bank Atlantic to foreclose upon her home").

Moreover, the fact that Plaintiffs seek money damages instead of an outright overturning of the state-rendered foreclosure judgments changes nothing: after all, money damages would only be available in the first instance if the state court's decision to grant the foreclosure were found to have been wrongful. *Goodman ex rel. Goodman v. Sipos*, 259 F.3d 1327, 1333 (11th Cir. 2001) ("The *Rooker-Feldman* doctrine is broad enough to bar all federal claims which were, or should have been, central to the state court decision, even if those claims seek a form of relief that might not have been

11

Case No. 8:11-CV-107-T-17-TGW

available from the state court."); *see Velardo*, 298 F. App'x at 892 (noting that in

analyzing *Rooker-Feldman* questions, "the court focuses on the federal claim's

relationship to the issues involved in the state court proceeding, instead of on the type

of relief sought by the plaintiff"); *see also Figueroa*, 766 F. Supp. 2d at 1324;

*Termarsch*, 2008 WL 1776592, at *3 (rejecting Plaintiff's argument that *Rooker-*

*Feldman* did not apply because "rather than challenging the state court's decision, he is

seeking relief under the RICO statutes"); *Swiatowski v. Citibank*, 745 F. Supp. 2d 150,

154 (E.D.N.Y. 2010) (dismissing federal claims under *Rooker-Feldman* "[a]lthough

plaintiff has labeled the relief in the complaint as seeking monetary damages").

### 3. Plaintiffs Had a Reasonable Opportunity to Raise
### Their Claims in State Court

Finally, Plaintiffs in this case had a "reasonable opportunity to raise [their] federal

claim[s] in state proceedings." *Casale*, 558 F.3d at 1260. "The same parties in this

action participated in the subject state proceeding, and a Florida court granted a final

judgment for foreclosure." *Parker*, 368 F. App'x at 948. The state-court dockets reveal

that both Plaintiffs were served with process under the appropriate Florida Rules of Civil

Procedure.  *See* Dkt. 64 (taking judicial notice of the state court foreclosure judgment

dockets). Even though default judgments were rendered against them in this case,

Plaintiffs had (and may well still have) the opportunity to pursue their claims in state

court. *See Parker*, 368 F. App'x at 948 ("[N]o record evidence suggests that [the

plaintiff] did not have an opportunity to raise her TILA claim in Florida or that the state

court would have prevented her from so doing."); *Figueroa*, 766 F. Supp. 2d at 1326

12

Case No. 8:11-CV-107-T-17-TGW

("Even if a default was entered in that case, it would not preclude a finding that Figueroa and Brown had a full and fair opportunity to litigate given that they were aware of the litigation and made a conscious decision not to respond."). Moreover, "[a] party's ability to raise a claim on appeal constitute[s] a reasonable opportunity to raise the claim." *Rice v. Grubbs*, 158 F. App'x 163, 165 (11th Cir. 2005) (alterations in original) (internal quotation marks omitted). That being so, "[i]t is for the state appeals courts and the U.S. Supreme Court to tell the state court it was wrong. This Court has no such role." *Figueroa*, 766 F. Supp. 2d at 167; *see Swiatowski*, 745 F. Supp. 2d at 167 ("[T]o the extent that plaintiff claims she was aggrieved by the state court's ruling, the proper venue to challenge that decision was by appeal in state court—not in federal court.").

Given that Plaintiffs attack the duly rendered judgments of the Florida state courts, this Court is without jurisdiction to hear this case. *See, e.g.*, *Velardo*, 298 F. App'x at 892. "The Court notes that its finding on the *Rooker-Feldman* doctrine does not necessarily leave Plaintiff[s] without a remedy. Any relief Plaintiff[s] seek[] must come from the court that entered the underlying judgment." *Termarsch*, 2008 WL 1776592, at *4. It does not appear that Plaintiffs have availed themselves of Florida's appellate mechanisms. To the extent Plaintiffs wish to challenge the underlying state court judgments, they should make themselves aware of the proper avenue for redress in the Florida courts. *Id*. Without subject matter jurisdiction, this Court need not—and cannot—go further. Accordingly, it is

**ORDERED** that Defendant's Motion to Dismiss (Dkt. 23) be **GRANTED** insofar

13

Case No. 8:11-CV-107-T-17-TGW

as this Court lacks subject matter jurisdiction pursuant to the *Rooker-Feldman* doctrine,

and **DENIED** without prejudice in all other respects. The Clerk of Court is directed to

close this case.

      **DONE AND ORDERED** in Chambers, in Tampa, Florida this 28 of February,

2012.


ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE


Copies to:
All parties and counsel of record

14